# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Staunton.

HONAKER & FEENEY, EMPLOYER, AND MARYLAND
CASUALTY COMPANY, INSURANCE CARRIER, v. SARAH
HARTLEY, CLAIMANT.

September 18, 1924.

1. MASTER AND SERVANT—*Workman's Compensation Act—Injury in the
Course of the Employment—Woodsman on Way to Bunk House from
Boarding House—Case at Bar.*—In the instant case a woodsman was
injured while returning to his employer's bunk house, immediately
after eating his breakfast at. his employer's boarding house, by
slipping on a board walk near the door of the bunk house, it being
dark at the time. The employer's foreman had temporarily left
the work and had instructed the woodsman to keep the time of the
men during his absence, and also to notify the men at the bunk house,
following breakfast, as to where they were to work that day.

   *Held:* That the injury arose out of and in the course of the employment
of the injured employee, within the meaning of the workman's com-
pensation act.

2. MASTER AND SERVANT—*Workman's Compensation Act—Injured in the
Course of the Employment.*—Whether an injury (which must, of
course, be accidental) to an employee in an industrial business
arose "out of and in the course of the employment" of the injured
employee may be very difficult to determine under some circum-
stances, and it is practically impossible to formulate any one defi-
nition that will include every injury embraced in these words, and
will exclude all injuries not embraced therein, and little help toward
the correct determination of the question in a particular case is
derived from the consideration of other cases involving different
circumstances.

3. MASTER AND SERVANT—*Workman's Compensation Act—Intent and Purpose of the Statute.*—The intent and purpose of the workman's compensation act is to make every industrial business bear the pecuniary loss, measured by the payment of compensation provided for in the statute, of all accidental injuries to employees engaged therein to the hazard or risk of the happening of which the injured employee is exposed, in a peculiar or abnormal degree, because of the fact that he is an employee engaged in the particular business.

4. MASTER AND SERVANT—*Workman's Compensation Act—Course of the Employment—Injury upon a Walkway Provided by the Employer.*—Wherever the injured employee is exposed to the happening of the injury which he has sustained, because of the fact that he is at the time of the accident walking along a walkway provided by the employer for his use at such a time each day in the usual course of the particular business (and thus for his use at the time of the accident), and he is, at the time, going along such walkway to another place, in strict accordance with the employer's orders, intended to regulate the movement of the employee at such time each day, in the regular course of the business, and where his obedience to such orders causes him to be at that particular place at the time of the accident, the injury is one to the hazard or risk of the happening of which the injured employee is exposed in a peculiar and abnormal degree, because of the fact that he was an employee engaged in the particular business in question; and, hence, in such a case the injury is one "arising out of and in the course of the employment," within the meaning of the workman's compensation act.

5. MASTER AND SERVANT—*Workman's Compensation Act—Course of the Employment—Injury Outside of Regular Working Hours.*—Where a workman is injured on a walkway provided by the employer for his use, while engaged in doing something his employer had instructed him to do, the circumstance that the accident and injury occurred outside of regular working hours is wholly immaterial. The statute does not confine the injuries which it embraces to those arising out of and in the course of the employment *during regular working hours*, but, by its very terms, embraces all injuries by accident arising out of and in the course of the employment, *i. e.*, out of the relationship which the employee bears to the employment—out of the discharge by the injured employee of his duty as employee (whether within or without any particular hours, being immaterial), whereby the employee is exposed, in a peculiar or abnormal degree, to the hazard or risk of the happening of the injury in question.

6. MASTER AND SERVANT—*Workman's Compensation Act—Costs—Attorney's Fee—Reasonable Ground of Defense.*—The workman's compensation act, section 63, provides that if the Industrial Commission or any court before whom proceedings are brought shall determine that

such proceedings had been prosecuted or defended without reasonable ground, it shall assess the whole cost of the proceedings upon the party who has brought or defended them. In the instant case the question presented was one which had never been decided by the Supreme Court of Appeals, was a debatable question, and one about which there might have been a reasonable and honest difference of opinion at the time the appeal was taken from the decision of the Industrial Commission.

*Held:* That the lower court erred in requiring the employer or insurance carrier to pay the claimant an attorneys' fee of $150.00, in addition to the compensation awarded her under the statute.

Error to a judgment of the Circuit Court of Russell county, affirming an award of the Industrial Commission, under the workman's compensation act, in favor of the claimant.

*Affirmed in Part.*

This is an appeal from the judgment of the circuit court which (1) affirmed an award of the Industrial Commission, under the workman's compensation law (laws 1918, C. 400), in favor of the claimant, Sarah Hartley, of compensation for the death of her deceased husband, L. D. Hartley, the employee, who received the injury in question; and (2) which required the employer and insurance carrier to pay to the claimant's attorneys, in addition to the said award in favor of the claimant, the attorneys' fee of $150.00 allowed by the Commission, the judgment of the court below departing, as to this matter, from the award of the Commission in this, the award of the Commission allowed this attorneys' fee to be paid out of the money awarded the claimant, whereas the judgment of the court does not allow that to be done, requiring it to be paid, as aforesaid, in addition to the award in favor of the claimant.

The statement of facts and the finding of facts by

the Industrial Commission are, so far as need be set out here, as follows:

"*Statement of Facts.*

"Honaker & Feeney were engaged in the lumber business in Russell county, Virginia, and came within the provisions of the workmen's compensation act.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"The appellee, Sarah Hartley, on behalf of herself and her minor children, filed a claim before the Industrial Commission of Virginia, claiming from appellants compensation for the death of her said husband. The appellants contested the claim on the sole ground that the injuries to and the subsequent death of said L. D. Hartley did not 'arise out of and in the course of the employment.' The Industrial Commission awarded compensation to appellee, from which award appellants appealed to the Circuit Court of Russell county, which court affirmed the award of the Industrial Commission and entered judgment in favor of the appellee for the amount of compensation awarded by the Industrial Commission, and, in addition thereto, the sum of one hundred and fifty dollars for attorney's fees.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"*Findings of Fact of the Industrial Commission.*

" 'The claimant is the widow of L. D. Hartley. On December 2, 1922, the said L. D. Hartley was in the employ of the firm of Honaker & Feeney, at or near Clinchfield, Russell county, Virginia. The employer was engaged in the business of cutting the timber from a tract of about 1,000 (acres), on which they owned the stumpage.

" 'L. D. Hartley was a woodsman, that is, he went into the woods to cut the trees. He also sharpened saws whenever necessary.

" 'The employer maintained and operated, for the convenience of its employees, a boarding house and various sleeping or bunk houses. Employees were charged seventy-five cents per day for board and lodging by the company. The boarding house was at a distance variously estimated at from thirty to one hundred yards from the bunk house where Hartley slept. Leading from the door of this bunk house to a tramroad was a boardwalk, about two and one half feet wide, extending for a distance of some twelve to fifteen feet. At the point where Hartley fell, the witnesses estimated that this walk was some three to four feet above the ground.

" 'It was customary for the employees to eat their breakfast at or near six o'clock in the morning.

" 'The morning of December 2, 1922, L. D. Hartley went to breakfast at the usual time, and was returning to the bunk house after breakfast when he slipped and fell off the boardwalk at a point six or seven feet from the door of the bunk house. It was still dark at the time.

" 'Employer's woods foreman had instructed the woodsmen to return to the bunk house immediately following breakfast, there to await further instructions as to the location of the day's work. The men were in the habit of leaving their hats, coats, etc., at the bunk house when they went to breakfast. On December 2, 1922, the woods foreman referred to had left the work temporarily, and instructed Hartley to keep the time of the men during his absence, and also to notify the men at the bunk house following breakfast as to where they were to work that day. However,

except for this, no change was effected in Hartley's position, and he continued to work in the woods as before.

" 'After he had fallen from the walk in the manner set out above, Hartley was at once assisted into the bunk house and a physician summoned. Examination showed that he was suffering from an injury to the urethra, and was bleeding profusely. The physician directed that he be sent to the George Ben Johnston Memorial Hospital, at Abingdon, and he was put in a car and taken there the same day.

" 'He apparently was making satisfactory progress at the hospital until December 12th, when he was examined preliminary to being discharged. This examination, however, was not satisfactory, and it was decided that it would be necessary to examine his posterior urethra. Following the usual method in such cases, a cocaine solution was prepared for injection. This solution was considerably weaker than that usually given to male patients, being slightly less than one-half ounce of four per cent cocaine solution. This was injected into the urethra. Immediately he began to manifest the most alarming symptoms and died within less than twenty minutes, the medical testimony being that he apparently died of cocaine poison, he being one of those persons to whom cocaine is absolutely poison.

" 'Although at the outset of the hearing the insurance carrier interposed as a ground of defense, "That the death of the deceased did not result from the accident, but from an injection of cocaine," this ground of defense has been abandoned, leaving only the question as to whether the accident was in the course of the employment.' "

*S. L. Sinnott,* for the plaintiff in error.

*Pennington, Price, Jones & Curtin,* and *St. John & Gore,* for the appellee.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

There are only two questions presented for decision by the assignments of error, which will be disposed of in their order as stated below:

[1-3] 1. Did the injury in the instant case arise out of and in the course of the employment of the injured employee, within the meaning of the workmen's compensation law?

The question must be answered in the affirmative.

Section 2, subsection D, of the workmen's compensation law, thus defines the injury for which compensation is provided by such law:

"Injury and personal injury shall mean only injury by accident, arising out of and in the course of the employment, and shall not include a disease in any form except where it results naturally and unavoidably from the accident."

Whether an injury (which must, of course, be accidental, as is prescribed by the statue) to an employee engaged in an industrial business arose out of or in the course of the employment of the injured employee may be very difficult to determine under some circumstances, as is illustrated by the numerous controversies over that question which have arisen under the various workmen's compensation laws of England and of the

different States of the United States of America, which contain the same definition as that in question contained in the Virginia statute, as appears from the cases on the subject in the books. And these cases demonstrate that it is practically impossible to formulate any one definition that will include every injury embraced in the above quoted statutory definition and will exclude all injuries not embraced therein. These cases further demonstrate that very little, if any, concrete help toward the correct determination of the question under consideration in a particular case is derived from the consideration of other cases involving different circumstances. About all that one finds in the various cases of differing circumstances are illustrations of the application of the general principle involved; and that, after all, is about as concretely and as clearly expressed in the statute as it can be expressed in any attempted all-embracing and all-excluding definition of the injury in question. It is made plain also by these decisions, and, indeed, is plain from the mere reading of the statute itself, that the intent and purpose of the statute is to make every industrial business bear the pecuniary loss, measured by the payment of compensation provided for in the statute, of all accidental injuries to employees engaged therein to the hazard or risk of the happening of which the injured employee is exposed, in a peculiar or abnormal degree, because of the fact that he is an employee engaged in the particular business. This is the general principle which the statute means to apply by the definition in question, and this principle must be used as the light to light the way in the quest as to whether the injury which is involved in any particular case is such an injury as is embraced in the statute. And without attempting any general definition applicable to all cases, we deem it sufficient here to say this:

[4] Certainly, wherever the injured employee is exposed to the happening of the injury which he has sustained because of the fact that he is at the time of the accident walking along a walkway provided by the employer for his use at such a time each day in the usual course of the particular business (and thus for his use at the time of the accident), and he is, at the time, going along such walkway to another place, in strict accordance with the employer's orders, intended to regulate the movement of the employee at such time each day in the regular course of the business, and where his obedience to such orders causes him to be at that particular place at the time of the accident, the injury is one to the hazard or risk of the happening of which the injured employee is exposed in a peculiar and abnormal degree because of the fact that he was an employee engaged in the particular business in question; and, hence, in such a case the injury is one "arising out of and in the course of the employment," within the meaning of the aforesaid statute and is embraced within its terms.

As appears from the findings of fact of the Industrial Commission above set forth, such, precisely, was the character of the injury in the instant case. This case, therefore, presents no serious difficulty, and we unhesitatingly arrive at the conclusion above stated, which is the same conclusion reached by the Industrial Commission and by the learned judge of the court below.

In *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 44 Sup. Ct. 153, 68 L. Ed., 30 A L. R. 532 (October Term, 1923), there was involved the question of whether the accidental injury to the employee was an injury "arising out of or in the course of the employ-

ment," within the meaning of the section of the workmen's compensation law of Utah (Comp. Laws 1917, (§ 3113), defining the character of the requisite injury, by the use of precisely the same language as the Virginian statute. The accident occurred off the premises of the employer, on a public road, at a railway crossing, outside the hours of employment, but shortly before such hours began, and when the injured employee was going to his place of work along the route he was accustomed to traverse daily, at about that time, in going to his work. The Supreme Court in that case holds that the injury involved was such an injury as is defined and embraced within the section of the statute mentioned—which, as aforesaid, is the same definition as that contained in the Virginia statute which we have under consideration. In the course of the opinion the Supreme Court says this: "Workmen's compensation legislation rests   *   *   upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital.   *   *   The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment, because of and in the course of which he has been injured.   *   *   it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory, though it need not be the sole or proximate cause. Legislation which imposes liability for an injury thus related to the employment   *   *   has a tendency to promote a more equitable distribution of the economic burdens in cases of personal injury, or death, resulting from accidents in the course of industrial employment.   *   *   Whether a given

accident is so related, or incident, to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road, or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.    *    * (Citing and reviewing numerous English and American cases.)    Here the location of the plant was at a place so situated as to make the customary and only practical way of ingress and egress one of hazard.  Parramore could not, at the point of the accident, select his way.  He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so.  And this he was obliged to do regularly and continuously as a necessity concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected.    *    * To attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employment.  The employment contemplated his entry upon and departure from the premises, as much as it contemplated his working there, and must include a reasonable interval of time for that purpose.  See *Gane* v. *Norton Hill Colliery Co.* (1909), 2 K. B. 539, 544, 78 L. J. K. B. (N. S.) 921, 100 L. T. (N. S.) 979, 25 Times L. R. 640, 2 B. W. C. C. 42; *Le Constantin* v. *Public Service Commission*, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916-A, 329."

The following cases are cited and relied on in argument in the instant case, for the employer and insurance carrier, namely: *Mahoney* v. *Sterling Borax Co.,* 2 Cal. Ind. Acc. Comm. 700; *Granite & Gravel Co.* v. *Willoughby,* 70 Ind. App. 112, 123 N. E. 194; *Malone* v. *Detroit United Railway,* 202 Mich. 136, 167 N. W. 966; *Taylor* v. *Binswanger & Co.,* 130 Va. 545, 107 S. E. 649; *Life Ins. Co. of Va.* v. *Russell Wood,* Law and Equity Court of the city of Richmond, opinion by Judge Beverley T. Crump, dated April 26, 1921, a copy of which is filed with the brief of counsel in the instant case.

In the *Mahoney Case,* the facts and the holding of the court appear from the following excerpt from the opinion of the court: "A laborer in the employ of defendant company, who boarded at the cook house and slept in the company's bunk house, both places being upon defendant's premises, after quitting work for the afternoon, while walking from the cook house to the bunk house after supper, fell and sustained a dislocation of the left shoulder and a fracture of the left thumb. On a claim for compensation the Industrial Accident Commission, upon the foregoing facts, held that the accident did not occur in the course of applicant's employment or while he was performing a service growing out of his employment, for the reason that the accident, happening outside of working hours, is not compensable. While an exception is usually made to this rule where the accident occurs upon the employer's premises, such exception could not be extended in the present case to cover the situation of the employee boarding and sleeping upon the employer's premises and being injured by an accident in and about the living quarters outside of working hours."

In the conclusion of law of the Industrial Commission in the instant case, this is said of the *Mahoney Case:* "There appears to be nothing in conflict with the conclusion here reached in the authorities cited for the insurance company.    For instance, the case of *Mahoney* v. *Sterling Borax Co.*, 2 Cal. Ind. Acc. Com. 700, apparently referred to with great confidence, was a case of an employee who boarded at the company's cook house and slept in its bunk house, as in this case. There, however, the similarity ends.   In the *Mahoney Case* the employee had definitely and unquestionably quit work for the day when the accident occurred. In the instant case, the conclusion is that the employee was engaged in doing something that the employer had instructed him to do, and what in reality amounted to a part of his day's work."

[5] We concur with the Commission in the view that the instant case is stronger in its facts showing that the injury occurred while the employee "was engaged in doing something the employer had instructed him to do, and what in reality amounted to a part of his day's work."   That is to say, in the instant case, the facts disclose that the discharge of his duty, under express instructions from the employer as to what he should do preceding the hours fixed for the daily regular work, resulted in the fact that the employee was in the actual discharge of his duty as an employee at the time of the accident and injury, and that this (the relationship which the employee bore to the employment) caused the employee to be at the place he was at the time of the accident and thus exposed him, in a peculiar and abnormal degree, to the hazard or risk of the happening of the accident; although it was outside of the regular working hours.   In such case the circumstance that the accident and injury occurred

outside of regular working hours is wholly immaterial. The statute does not confine the injuries which it embraces to those arising out of and in the course of the employment *during regular working hours;* but, by its very terms, embraces all injuries by accident arising out of and in the course of the employment, *i. e.*, out of the relationship which the employee bears to the employment—out of the discharge by the injured employee of his duty as employee (whether within or without any particular hours, being immaterial), whereby, as aforesaid, the employee is exposed, in a peculiar or abnormal degree, to the hazard or risk of the happening of the injury in question.

Aside, however, from the particular distinguishing feature of it mentioned above, we think the *Mahoney Case* is out of line with the weight of authority and the better opinion touching the basic principle involved, which we have above referred to, and which is so forcibly stated by the Supreme Court in the *Parramore Case*, in the excerpts therefrom above quoted.

With respect to the other cases above mentioned as cited and relied on, as aforesaid, we deem it sufficient to say that we find nothing in them in conflict with the views we have above expressed; for the reason that in none of them was it a fact that the discharge by the injured employee of his duty as such occasioned his being at the place of the accident at the time of the accident and injury. Stated differently, in none of those cases was it a fact that the discharge by the injured employee of his duties as such occasioned his being in the place of the accident at the time of the accident and injury—and so occasioned his being at that time exposed, in any peculiar or abnormal degree, to the hazard or risk of the happening of the accident and injury in question. And we find much in those

cases in confirmation of the correctness of the views and conclusion we have stated above.

[6] 2. Did the court below err in requiring the employer or insurance carrier to pay the attorneys' fee of the claimant, in addition to the compensation awarded her under the statute.

The question must be answered in the affirmative.

The claimant relies upon section 63 of the workmen's compensation law to sustain the action of the court below in question. That section provides as follows:

"If the Industrial Commission or any court before whom any proceedings are brought under this act shall determine that such proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who has brought or defended them."

Without deciding whether attorneys' fees are "costs" within the meaning of this section of the statute, we do not think that the court below was warranted by anything that appears from the record in holding that this case was brought before the court below on appeal by the employer or insurance carrier "without reasonable ground." The question presented to the court below and upon this appeal was, and will be until this opinion is handed down, one which was undecided by this court; and although the Commission, the court below and this court have reached the same conclusion, and one adverse to the contention of the parties appealing, and we have reached that conclusion without serious difficulty, yet, we are constrained to recognize that the question involved was certainly a debatable question and one about which there may have been a reasonable and an honest difference of opinion at the time the appeal was taken to and prosecuted in the court below.

We will, therefore, reverse and annul the judgment under review on the subject of the attorneys' fee, in so far as it differs from the order of the Commission on that subject. In all other respects the judgment under review will be affirmed, which will have the effect of leaving the award of the Commission and its order as to the aforesaid attorneys' fee, in all respects in full force and effect. Costs will be awarded the claimant as the party substantially prevailing in this court.

*Affirmed, except that the provision of the judgment under review as to the attorneys' fee, to the extent that it differs from the order of the Commission, is reversed.*