## 𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡

WILLIAM H. FERRELL v. RODNEY W. BEDDOW.

April 23, 1962.

Record No. 5407.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, l'Anson and Carrico, JJ.

*Edward S. Hirschler* (*Miles Cary, Jr.; Hirschler, Fleischer & Sadler,* on brief), for the plaintiff in error.

*Travis W. Poole* (*M. Wallace Moncure, Jr.,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

William H. Ferrell, as a result of injuries he sustained when Rodney W. Beddow struck him with a vehicle he was operating, instituted an action at law against Beddow for damages. Beddow filed a plea in abatement to the jurisdiction of the court, alleging that sole jurisdiction rested in the Industrial Commission under the Virginia Workmen's Compensation Act. Ferrell, in his reply to the plea, denied the allegation. After hearing evidence *ore tenus*, the court sustained the plea and dismissed the action. We granted Ferrell a writ of error.

The underlying question presented is whether the evidence was sufficient to sustain the trial court's finding that the accident and the resulting injuries arose out of and in the course of the employment of Ferrell and Beddow.

The plaintiff, William H. Ferrell, and the defendant, Rodney W. Beddow, were employees of Somers M. Wilton, Inc., a building contractor. Somers M. Wilton was the president and active head of the corporation. Ferrell, who was trim carpenter foreman, and Beddow, a carpenter, were paid by the hour for their work. The work day began at 7:30 a.m. and ended at 4 p.m. They were assigned duties on a house on Ledbury road being constructed by the corporation in one of its projects known as Pinedale Farms in Henrico county. They worked as a team and had been employed by the corporation for several years.

Ferrell was accustomed to arriving at job sites a considerable time before 7:30 a.m. and on August 22, 1960, he arrived in his street clothes about 7 a.m. He parked his station wagon on Ledbury road opposite the house being constructed, which was situated approximately 30 feet from the road. In his vehicle were the corporation's tools, hinges, locks, etc., as well as property of his own. He took his lunch box, work clothes and a handsaw, which he had sharpened on his own time for a fellow employee, out of his vehicle and carried them into the house. While still dressed in his street clothes, he returned to his station wagon, opened both the upper and lower tail gates and reached for his skill saw. Beddow in the meantime had arrived in his vehicle with ice to be used for cooling drinking water on the job and was in the act of parking behind Ferrell when he accidently hit the clutch instead of the brake as his car was coasting down the road. His vehicle struck Ferrell while he was reaching for the saw and caused his station wagon to move forward. Ferrell

was taken to the hospital by a rescue squad for treatment of his injuries. The time of the accident was about 7:15 a.m.

The evidence adduced was conflicting as to whether the accident arose out of and in the course of the employment of Ferrell and Beddow. Beddow testified that picking up ice on his way to work in the morning and distributing it at the project where he worked was one of his extra duties assigned by Wilton, but others would perform this duty on occasions; that on the morning of the accident he had distributed ice to a painter in the Pinedale Farms project and had ice in his car for himself and Ferrell, and that remuneration for this service was included in his hourly rate of pay. He further testified that another duty of his was to remove the corporation's tools that would be needed on a particular day from Ferrell's vehicle and carry them into the house, but that "sometimes Mr. Ferrell would help me", and that Ferrell usually took the corporation's tools home each night.

Ferrell stated that he did not know anything about extra duties being assigned to Beddow; that Beddow had picked up the ice and distributed it at times, and that he had carried the tools into the place of work "right regular." When asked whether he was designated as custodian of the tools, he replied, "No, he don't dedicate me to take care of them. He [Wilton] told me to put them in the attic if I didn't want to take care of them. He didn't pay me to take care of them." He said he took the corporation's tools home to use on personal work, and that when Wilton assigned him to extra jobs, he kept his own time and was paid for such work.

Somers M. Wilton stated that he and Beddow married half sisters; that around April, 1960, he raised Beddow's hourly rate of pay from $2.30 to $2.50, pursuant to a conference between the two after Beddow had indicated an intention to seek employment elsewhere, and that prior to that time he paid Beddow extra compensation for securing and distributing the ice and putting up the electric cords before the work day commenced. He further stated that he paid George Clem additional money for "stopping by the ice house"; that at the time of the accident he was not paying Beddow for securing the ice or bringing in the tools and the cord; that he did not have any duties except to "be ready to start hammering or sawing at 7:30 in the morning." He also said that he did not pay Ferrell for taking the tools home at night or carrying them from his vehicle to his place of work. He did say that he designated Ferrell as custodian of his tools. When asked what instructions were given Ferrell with respect to the tools, he answered, "I just told him that I wanted him to take care of

my tools and to look after them, etc., and that he could either put them up in the attic or carry them home or do what he chooses with the tools." In reply to a question as to whether he had told Beddow that he did not have to do the chores in question, he stated, "I never told him he did or didn't."

Archie H. Hagen, foreman on the job, testified that to his knowledge Beddow was not paid for doing anything before 7:30 a.m., and that he did not require him to do anything before that time. He also said Ferrell was not designated as custodian of the tools; "if he didn't want to do it, I would have to get there as soon as I could after work and see that they were safe." He stated that Ferrell could either lock them up in the house or take them home.

George Clem testified that he worked with the "frame crew"; that he was paid for an extra half hour for picking up the ice and bringing it to the jobs; that on the date of the accident he was working at Roxbury, another project of the corporation located about a quarter of a mile from Pinedale Farms, and that Beddow came there on the morning of the accident for the ice to take to Pinedale for the painters and trim gang as he usually did.

■ Where an employee subject to the Act is injured by a fellow employee, an award under the Act is the exclusive remedy. *Phillips v. Brinkley*, 194 Va. 62, 65, 72 S. E. 2d 339; Code § 65-37.

An injury is not compensable unless it "arises out of and in the course of" the employment, and the circumstances of each particular case control whether the injury is compensable. *Sullivan v. Suffolk Peanut Co.*, 171 Va. 439, 443, 199 S. E. 504.

Generally, an employee going to and from the place where his work is to be executed is not engaged in any service growing out of and incidental to his employment. One of the recognized exceptions to the rule is where the employee is still charged with some task or duty relating to his employment while going to or from his place of work. *Kent v. Vir.-Car. Chem. Co.*, 143 Va. 62, 66, 129 S. E. 330.

*Cohen v. Cohen's Department Store*, 171 Va. 106, 198 S. E. 476, involved a situation where Cohen, the president and manager of the store left the store, crossed the sidewalk to the curb in response to a customer's call. They talked about golf and an account due by the customer. When he stepped back from the customer's vehicle, Cohen fell and broke his hip. We held his injury arose "out of and in the course of his employment." There we observed that the Virginia Workmen's Compensation Act was based upon the Indiana Act and

quoted with approval from *In re Ayers,* 66 Ind. App. 458, 462, 118 N. E. 386, 387, wherein it is stated:

"A workman who receives an injury while at a place on, or reasonably near, the premises where he is to work, or at a place to which his employment requires him to go while doing something incident to or connected with his employment, or which is resonably necessary for, and preparatory to, the beginning of his work, or while doing something reasonably connected with his employment, or incident thereto, after his actual labors in his employment are completed for the day, or for any particular period, may be allowed compensation for such injury." (Citing cases.)

There we also quoted with approval from *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich. 462, 464, 187 N. W. 380, 381, where the court had this to say:

"* * * Broadly defined, it may be taken as authoritatively settled that 'out of and in the course of his employment' covers those accidents which befall an employee while he is discharging some duty he is authorized or directed to perform for the furtherance, directly or indirectly, of his employer's business.* * *"

Section 65-7, Code 1950, reads:

"Unless the context otherwise requires, 'injury' and 'personal injury' mean only injury by accident, or occupational disease as hereinafter defined, arising out of and in the course of the employment and do not include a disease in any form, except when it results naturally and unavoidably from either of the foregoing causes."

Thus we observe that the statute does not confine injuries which it embraces to those which arise out of and in the course of employment during regular working hours. Whether the injury occurred outside of regular working hours is immaterial so long as it arose "out of and in the course of the employment." *Honaker* v. *Hartley,* 140 Va. 1, 14, 124 S. E. 220.

■ The trial judge, who heard and saw the witnesses testify, found as a fact that both Ferrell and Beddow were employees of Somers M. Wilton, Inc., and were charged with "some duty or task in connection with their employment within a reasonable time prior to actually going to work and that the plaintiff Ferrell sustained an accident arising out of and in the course of his employment."

The judgment of a trial court upon conflicting evidence has the same weight as the verdict of a jury and we are not at liberty to disturb the finding unless plainly wrong or without evidence to support it. *Smith* v. *Pippin,* 188 Va. 869, 876, 51 S. E. 2d 159. We cannot say

that the testimony of Beddow and other witnesses was incredible. As was said in *Bradley* v. *Commonwealth*, 196 Va. 1126, 1136, 86 S. E. 2d 828, "In testing the credibility and weight to be ascribed to the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."

The evidence and reasonable inferences therefrom were sufficient to establish that at the time of the accident both Ferrell and Beddow were fellow employees reasonably near the premises where they were to work; that they were performing authorized duties incident to and connected with their employment, which were reasonably necessary and preparatory to the beginning of their work, and were in furtherance, either directly or indirectly of their employer's business. Thus, we find no reversible error in the trial court's ruling that the accident arose out of and in the course of the employment and that Ferrell's exclusive remedy was under the Workmen's Compensation Act.

The judgment appealed from is

*Affirmed.*