HUTZELL *v.* BOYER

[No. 23, September Term, 1968.]

*Decided January 23, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, FINAN and SINGLEY, JJ.

*Kenneth J. Mackley* and *Evan Crossley,* with whom were *Howard W. Gilbert, Jr. Ottinger, Mackley & Gilbert, Crossley & Latimer, Francis B. Burch, Attorney General,* and *William E. Brannan, Assistant Attorney General,* on the brief, for appellant.

*Leroy W. Preston,* with whom were *O'Connor & Preston, Irving M. Einbinder* and *Edwin F. Nikirk* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

In 1963 plaintiff-appellee, Robert E. Boyer and defendant-appellant, Claude M. Hutzell, had been working on various paving construction jobs in the Fredericksburg, Virginia area. During that year the superintendent of paving for the General Paving Corporation, Mr. Robert Cole, offered both men jobs with his company. General Paving is a Virginia corporation engaged in the laying of asphalt roads and driveways in the Fairfax, Virginia area. The offer included higher wages and free transportation furnished by the company to and from work each day. Both plaintiff, Boyer and defendant, Hutzell, accepted the jobs offered by Mr. Cole. Boyer went to work as a roller and Hutzell as a foreman. Boyer and Hutzell resided near Boonsboro, Maryland and had known each other for a long time, having worked together for a number of years. General Paving gave Hutzell the use of a company truck which he regularly drove back and forth from his home to various construction sites. Boyer, would drive his car to Hutzell's residence and would then ride to work in the company truck with Hutzell. They had followed this procedure for more than two years prior to the accident.

On September 10, 1965, the two men left their homes in Boonsboro at approximately 4:00 A.M. and traveled to Fairfax, Virginia, where General Paving was engaged in laying macadem on a parking lot. The job was completed in the afternoon and Hutzell and Boyer got into the truck and started for home. On the way they stopped near Fairfax and purchased four cans of beer. Hutzell drank one can and poured another out

because it was too warm. Boyer drank all of the contents of one can and half of the other. Hutzell had drunk no other alcoholic beverage that day and, according to Boyer, Hutzell's manner of driving was satisfactory. The plaintiff, Boyer, was riding in the cab of the truck on the passenger side and the defendant, Hutzell, was driving. They had covered most of the eighty miles between Fairfax and Boonsboro when, at approximately 5:00 P.M., while approaching the top of Braddock Mountain in Frederick County, Maryland, Boyer noticed that the truck was pulling off the road onto the shoulder and he thought they had a flat tire. He glanced over at Hutzell and saw that he had fallen asleep. Boyer tried to stop the truck. He reached over, grabbed the steering wheel and hit the brakes, but the truck went off the road, through a fence and struck a utility pole. The truck was a total loss and Boyer, who was seriously injured, was taken from the scene by ambulance to a hospital in Frederick, Maryland. He had sustained fractures to a number of ribs and other internal injuries. On the third day after his admission to the hospital Boyer suffered, what his treating physician diagnosed as, acute pulmonary edema which filled his lungs and which condition was attributed to the accident. Boyer was in the hospital for twenty-four days and continued under doctor's care until the time of trial.

Boyer filed a claim for disability compensation with the Workmen's Compensation Commission of Maryland but, by order dated January 13, 1966, the claim was denied on the ground that the Commission was without jurisdiction. No claim was filed by Boyer with the equivalent agency in Virginia. Instead, Boyer alleging permanent injury, filed a common law tort action against Hutzell and the General Paving Corporation in Washington County, Maryland. On motion by way of a preliminary objection, General Paving was dismissed as a party defendant. Interrogatories were filed by both parties and answered. The plaintiff was examined by the defendant's medical witness and the plaintiff's doctor was deposed prior to trial. The case was set for trial on May 22, 1967. Prior to the trial the defendant sought to have the plaintiff examined a second time because the defendant learned, after taking the deposition of the plaintiff's physician, Dr. Secondari, that the plaintiff's

condition had worsened and that Dr. Secondari felt that this condition would be permanent. This request for the second examination of the plaintiff by the defendant's medical witness was refused by the trial court but the defendant's medical witness was given access to all hospital records and electrocardiograms which had been taken at the hospital.

On May 17, 1967, the defendant filed a notice that at trial he intended to rely on the statutory and case law of Virginia pertaining to a tort action by one employee against another fellow employee.

At trial the testimony of opposing medical expert witnesses was sharply in conflict as to the nature and extent of the plaintiff's physical disability and as to the causal connection between Boyer's physical condition and the injuries sustained in the accident. The plaintiff's family physician testified that Boyer was suffering from a heart condition brought on by the accident which rendered him totally and permanently disabled. The defendant's expert medical witness found no edema and testified that the plaintiff had a predisposition to the development of arteriosclerosis and hypertensive heart disease. He was of the opinion that the causal connection between the accident and the plaintiff's physical condition was a probability but "not a strong one." At the close of the plaintiff's case and again at the close of the defendant's case, the defendant moved for a directed verdict, both of which motions were denied. The defendant also moved that the 52 year old plaintiff be required to reduce to present value his future lost earnings, which motion was likewise denied. The lower court instructed the jury that, as a matter of law, the defendant was guilty of negligence in falling asleep while operating a motor vehicle and the only question for them to decide was the amount of damages to which the plaintiff was entitled. The jury returned a verdict in the amount of $70,000.00. Subsequent motions for a judgment *n.o.v.* or for a new trial were denied.

On appeal the appellant contends, (1) that the defendant's tort action in Maryland was foreclosed by the exclusiveness of the Virginia Workmen's Compensation Law; (2) it was an abuse of discretion of the trial court to refuse to allow a second medical examination of the plaintiff; (3) that the trial court

erred when it refused appellant's proffered prayer requiring the determination of the present value of the appellee's damages for future medical care, loss of wages and earning capacity; and (4) that the trial court's instructions to the jury on liability were erroneous.

I

Of the four grounds for appeal, only the first presents any difficulty of resolution and with regard to it we think the rationale of the lower court was correct.

In the case at bar there is no question, but that the contract of employment was made in Virginia, all the work was performed there and the employer furnished the transportation to and from the employees' residence in Maryland to the job site in Virginia; however, the accident happened in Maryland. The Virginia Workmen's Compensation statute, Section 65-37 of the Code of Virginia (1950), provides that the rights accorded an employee under the Workmen's Compensation Law excludes all of his other rights and remedies, at common law or otherwise, arising out of his injury. This excludes a tort action by one employee against another fellow employee. *Phillips v. Brinkley,* 72 S.E.2d 339 (1952).

The Maryland Workmen's Compensation Law, Code (1964 Repl. Vol.) excludes an action in tort by an employee against his employer, but does not exclude tort actions between co-employees.

The plaintiff sought to invoke the benefits of the Maryland Workmen's Compensation Law, filing a claim for compensation under our Act, seeking an award for the disability sustained as a result of the accident which is the subject of this suit. However, under an order dated January 13, 1966, the Maryland Workmen's Compensation Commission dismissed the claim on the ground that the Maryland Commission was without jurisdiction.

It is also significant that the plaintiff did not file any workmen's compensation claim with the equivalent agency in Virginia.

In the instant case the core of the appellant's argument is that compliance with the "Full Faith and Credit Clause" of Article IV, Section 1 of the Constitution of the United States, re-

quires us to apply the Virginia Workmen's Compensation Law, with its exclusive feature, unless to do so is obnoxious to the declared public policy of this State.

The appellant makes a strong case that there is nothing extant in Maryland case or statutory law which supports a formulated or defined public policy against granting immunity to fellow employees from tort action, as provided in the Virginia statute; hence, appellant contends we should honor the Virginia law. However, his argument has not persuaded us.

Although there are no decisions in this Court involving a tort action by an employee against a co-employee, we note the fact that for over 50 years the Workmen's Compensation Law of this State has contained no express prohibition against such a suit. Indeed, at least one *nisi prius* court has held that a tort action could lie against a negligent fellow servant. *Crown Cork and Seal Co. v. Hutter.* (Superior Court of Baltimore City) Daily Record, March 13, 1943.

We also recognize that the State of Maryland has a genuine interest in the welfare of a person injured within its borders, who may conceivably become a public charge due to a disabling injury. The social and economic problems following in the wake of a serious injury as they may affect the dependents of the person injured are properly matters of public concern.

Also, in another aspect, viewing this suit as a tort action, uncomplicated by any consideration of the impact of divergent workmen's compensation statutes, the law in this state is clear, that the principle of *lex loci* prevails, this Court having refrained from adopting the "center of gravity" or "grouping of contacts" doctrine in *White v. King,* 244 Md. 348, 233 A. 2d 763 (1966).

We take sustenance from the language found in *Carroll v. Lanza,* 349 U. S. 408 (1955). In that case the employee and subcontractor for whom he worked were both residents of the State of Missouri, the injury occurred in Arkansas. The employee received benefits under the Missouri Workmen's Compensation Act, which provided that the rights and remedies granted by it were to be exclusive of all other rights and remedies, "at common law or otherwise," on account of the injury. While receiving benefits under the Missouri Act the employee

sued the prime contractor in tort in Arkansas. The contractor had the case remanded to the Federal District Court, where judgment was rendered for the employee. The Circuit Court of Appeals, while agreeing with the District Court that the judgment was sustainable as a matter of Arkansas Law, reversed on the ground that the "Full Faith and Credit Clause" barred recovery. On certiorari to the United States Supreme Court, Justice Douglas writing for the six member majority reversed the Circuit Court of Appeals stating:

> "The *Pacific Employers Insurance Co.* Case [cited earlier in the opinion 306 U. S. 493,] allowed the Compensation Act of the place of the injury to override the Compensation Act of the home State. Here it is a common-law action that is asserted against the exclusiveness of the remedy of the home State; and that is seized on as marking a difference. That is not in our judgment a material difference. Whatever deprives the remedy of the home State of its exclusive character qualifies or contravenes the policy of that State and denies it full faith and credit, if full faith and credit is due. But the *Pacific Employers Insurance Co.* case teaches that in these personal injury cases the State where the injury occurs need not be a vassel to the home State and allow only that remedy which the home State has marked as the exclusive one. The State of the forum also has interests to serve and to protect. Here Arkansas has opened its courts to negligence suits against prime contractors, refusing to make relief by way of Workmen's compensation the exclusive remedy. *Baldwin Co. v. Maner,* [273 S.W.2d 28] *supra.* Her interests are large and considerable and are to be weighed not only in the light of the facts of this case but by the kind of situation presented. For we write not only for this case and this day alone, but for this type of case. The State where the tort occurs certainly has a concern in the problems following in the wake of the injury. The problems of medical care and of possible dependents are among these, as *Pacific Employers Insurance Co. v. Commission, supra,* em-

phasizes. *Id.* at 501. A State that legislates concerning them is exercising traditional powers of sovereignty. Cf. *Watson v. Employers Liability Corp.*, 348 U. S. 66, 73. Arkansas therefore has a legitimate interest in opening her courts to suits of this nature, even though in this case Carroll's injury may have cast no burden on her or on her institutions." Id. at 412, 413.

See also *Pacific Employers Insurance Co. v. Industrial Accident Commission,* 306 U. S. 493 (1939); *Collins v. American Buslines,* 350 U. S. 528 (1956); *In Re Lavoie's Case,* 334 Mass. 403, 135 N.E.2d 750 (1956); *Mandle v. Kelly,* 229 Miss. 327, 90 So. 2d 645 (1956); Restatement, *Conflict of Laws,* § 401, comment b (1948 Supp.); and Larsen, *Workmen's Compensation,* Vol. 2 (1968 Supp.) p. 377.

The appellant relied heavily on the New Jersey case of *Stacy v. Greenberg,* 9 N. J. 390, 88 A. 2d 619 (1952). In that case an employee, while working under an employment contract made in New York State and traveling from the work site in Pennsylvania, enroute to New York, was injured in an automobile accident in the State of New Jersey and sued a co-employee who was operating the vehicle in which they were traveling. The Workmen's Compensation Law of New York precluded any suit against a fellow employee, whereas such an action in tort was permissible under the New Jersey Workmen's Compensation Act. Judge Brennan, now Mr. Justice Brennan, saw fit to give "Full Faith and Credit" to the New York Workmen's Compensation Act, declaring it was not obnoxious to any public policy of the State of New Jersey. He also spoke of the matter of comity between the two states. He was impressed with the fact that:

"* * * They were not in New Jersey upon a work assignment to be performed in this State. Their presence here, though in the course of and incident to their New York employment, was merely as transients en route back to New York City after completion of a work assignment in Pennsylvania connected with their primary New York employment. Their contact with our State was purely casual and not in the performance of their employment contracts within the reach of our

decisions which imply our statute into a foreign contract of hiring to be performed in this State. * * *"
*Id.* at 622.

Although *Stacy* was decided prior to the opinion of the United States Supreme Court in *Lanza*, it is doubtful that knowledge of it would have influenced the result reached by the Supreme Court of New Jersey, as that Court did have the benefit of *Pacific Employers' Insurance Co. v. Industrial Accident Commission, supra.* We make no attempt to reconcile the *Stacy* case with our own decision in the instant case; it suffices to say, that whereas the New Jersey Court found that it was not obnoxious to the public policy of that state to apply the "Full Faith and Credit" of the New York statute making the co-employee immune from suit, we are unable to make a similar finding with regard to the Virginia statute and the public policy of Maryland.

## II

We do not think the trial court erred in refusing to order a second physical examination of the plaintiff. The nature of the plaintiff's disability was related to his heart condition. The defendant's medical witness, who was an internist and heart specialist, had examined the plaintiff once some months previous to the last request. He was given the benefit of the deposition of the plaintiff's physician and, although refused a second opportunity for a physical examination, was given access to the plaintiff's hospital records and the latest electrocardiogram taken of the plaintiff. The physical deterioration, if any, with which the defendant was concerned was germane to the plaintiff's heart condition. The defendant's medical witness could obtain clinical information for evaluation of the plaintiff's condition from the electrocardiogram. The evidence reveals that there were no surprises and that the defendant's case was not prejudiced by the court's refusal to order a second physical examination of the plaintiff prior to trial. We find no abuse of the court's discretion in refusing to order the second examination.

The right to a mental or physical examination provided for under Maryland Rule 420 is a matter to be granted within the sound discretion of the court "for good cause shown." *Lucas v.*

*Williams,* 218 Md. 322, 329, 146 A. 2d 764 (1958). Also, in *State v. Musgrove,* 241 Md. 521, 531, 217 A. 2d 247 (1966), this Court recognized a distinction between mental and physical examinations contemplated by Rule 420 and other discovery procedures provided within the Maryland Rules.

## III

The appellant cites as error the trial court's refusal to grant a motion requiring the determination of the present value of the appellee's damages for future medical care, loss of wages and earning capacity. The trial court in its memorandum on the motion for judgment *n.o.v.* stated, "there was no instruction proffered in this regard, so it is impossible to be in error for refusing an instruction that was not requested." However, we do note that the record contains a prayer requested by the appellant in which he asked the court to instruct the jury that the measure of damages should not be the difference between the plaintiff's probable earnings before and after the injury, but the reasonable present value of the reduction of his earning capacity. The plaintiff offered no evidence, nor proffered any formula as to how the present value may be estimated, as was done in *Baltimore Transit Company v. Worth,* 188 Md. 119, 142, 52 A. 2d 249 (1947). However, assuming that the proper request for an instruction was made, we do not think the lower court's refusal to grant such an instruction, if error at all, was prejudicial error. To be certain, this Court has approved the reduction of damages to present value, *Baltimore Transit Company v. Worth, supra; Scott v. James Gibbons Co.,* 192 Md. 319, 331, 64 A. 2d 117 (1949) ; *Sherley v. Sherley,* 118 Md. 1, 26-27, 84 A. 160 (1912), to mention but a few cases and in *U. S. v. Guyer,* 218 F. 2d 266, 268 (4th Cir. 1954) the District Court said that, "Under the law of Maryland the measure of recovery for wrongful death * * * is the present value of the pecuniary benefit which the [survivors] might reasonably have expected to receive from [the deceased] if he had not been killed." This principle was also followed by the federal court in *Jennings v. U. S.,* 178 F. Supp. 516 (D.C. Md. 1959), a death case wherein Judge Watkins set forth in detail the procedure to be followed in establishing the present value of damages. However, reduction of damages to present value is not cus-

tomary in Maryland, except in cases of wrongful death, as is evident from the decision of this Court in *Adams v. Benson,* 208 Md. 261 (1955). In the instant case the trial court in rendering its instructions concerning damages followed, almost verbatim, the language found in *Adams v. Benson,* stating:

> "* * * In determining the amount of damages, you should consider the health and condition of the Plaintiff immediately before the accident and the injuries complained of as compared with his present condition in consequence of such injuries. If you find this present condition is a direct and proximate result of the collision, and also for what period of time and to what extent such injuries are calculated to prevent the Plaintiff from engaging in those pursuits in the absence of such injuries he would have been qualified and also the physical and mental suffering to which he has been and may hereafter be subjected by reason of such injuries. And also, the medical expenses which he has incurred and likely to incur in the future as a direct consequence of said injuries."

There was evidence before the jury from which it could have found that the plaintiff sustained a permanent total physical disability and we think the instruction given was sufficient to spell out its obligation to fairly assess future loss of wages as a result of the plaintiff's diminution of earning capacity, as well as damages for future medical care.

The appellant also complains of the absence of evidence as to the plaintiff's life expectancy. To be sure, such evidence would have been helpful but we do not think that its absence is fatal to the appellee's case. There was evidence as to the age of the plaintiff. The jury heard medical testimony as to his physical condition and that in the opinion of his physician he would live his normal life expectancy, and they saw and observed him as a testifying party. We think the trial court's instructions were adequate, if not comprehensive. *Adams v. Benson, supra.*

The appellant also contends that insufficient evidence was presented, as to the plaintiff's loss of income, to permit the jury to make a fair assessment. The short answer to this con-

tention is that there was evidence as to the plaintiff's earning capacity and of the loss of that capacity. There was evidence as to his hourly rate of pay at the time of the accident; there was evidence that he had earned as much as $190.00 in one week, with overtime; and the appellant in his brief states that the plaintiff's annual income for 1965 was $3,311.61; for 1964, $4,722.52 and for 1963, $4,234.80. The establishing of earning capacity by work performed in the past has been allowed by this Court in *Delph v. Ammons,* 239 Md. 662, 212 A. 2d 504 (1965); *Ihrie v. Anthony,* 205 Md. 296, 107 A. 2d 104 (1954); and *Bender v. Popp,* 246 Md. 65, 227 A. 2d 237 (1967). See also *Adams v. Benson, supra.*

The appellant also complained about the allowance of medical expenses which he claims were unsubstantiated as to reasonableness. These items were $332.25 for Dr. Secondari and $881.22 for the hospital (plaintiff was in the hospital for 24 days). A reading of the record convinces the Court there is no merit to this contention.

IV

Finally, the appellant takes issue with the trial court's instruction to the jury that the defendant in falling asleep while operating the motor vehicle was, as a matter of law, guilty of negligence. The appellant contends that absent this instruction, the jury may have properly concluded that the plaintiff came under the assumption of risk doctrine by virtue of his driving with a person who was fatigued as a result of having been up since 4:00 A.M. and to his knowledge having worked all day. In addition he argues that it should have been left to the jury to decide whether the plaintiff was guilty of negligence in attempting to grab the wheel as the truck went off the road, rather than trying to awaken the defendant.

The evidence showed that the plaintiff had followed the same routine with the defendant for over two years, arising around 4:00 A.M., driving to the Fairfax, Virginia area and returning after a day's work to Boonsboro. There was no evidence that the beer the defendant had consumed before leaving Virginia on the return trip home had affected his driving ability. There was no evidence in this case which should have prompted the plaintiff to have sensed danger. There was no evidence from which the jury could have found an assumption of risk on the

part of the plaintiff. *Martin Furniture v. Yost,* 247 Md. 42, 52, 230 A. 2d 338 (1967) ; *White v. King,* 244 Md. 348, 223 A. 2d 763 (1965).

As to the quality of the plaintiff's action in grabbing the steering wheel as the truck veered off the road, this was a reflex action which a reasonable person would perform faced with such an emergency. There certainly was not time to elect options as the appellant suggests and there was no evidence for the jury to consider in this regard. *Burhans v. Burhans,* 159 Md. 370, 150 A. 795 (1930). See also *Scott v. Hampshire, Inc.,* 246 Md. 171, 227 A. 2d 751 (1967).

*Judgment affirmed, with costs.*