Marsha H. WILSON, Administratrix of the Estate of Clive N. Wilson, deceased

v.

Tamsen K. FRASER, executrix of the Estate of Lawrence A. Fraser, deceased.

Civ. No. 21351.

United States District Court, D. Maryland.

Jan. 29, 1973.

Thomas E. Cinnamond, Thomas Waxter, Jr., and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

BLAIR, District Judge.

This is a wrongful death action arising out of a Virginia automobile accident in which both Clive N. Wilson and Lawrence A. Fraser were killed. The plaintiff is Wilson's widow, Marsha, the administratrix of his estate, and the defendant is Fraser's widow, Tamsen, the executrix of his estate. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332. Counsel have agreed that pursuant to Rule 42(b) of the Federal Rules of Civil Procedure this court is to first determine whether this wrongful death action is barred as a matter of law. For that purpose, the pertinent facts have been presented by stipulation.

Clive N. Wilson and Lawrence A. Fraser had both worked for Sears, Roebuck & Company for a number of years at several locations. At the time of their deaths, they were both managerial employees in Sears' Bethesda, Maryland store and they were both residents of Maryland. To reward certain of its managerial employees for a successful sales promotion, Sears sponsored a dinner at the Market Inn in Washington, D. C. on January 10, 1969. Both Wilson and Fraser attended. Following the dinner, Wilson and Fraser left the Market Inn in the early morning hours of January 11, 1969 in Fraser's car to return to the Sears store in Bethesda so that Wilson could pick up his car. While proceeding along the George Washington Memorial Parkway in Arlington, Virginia, Fraser apparently lost control of his car and ran off the road striking a tree. Both occupants died from the injuries received in the accident.

Sears is a large multi-state employer doing business in both Maryland and Virginia and at the time of the deaths had the requisite number of employees and had filed certificates of self insur-

Bayard Z. Hochberg and Levin & Hochberg, Baltimore, Md., for plaintiff.

ance under the workmen's compensation law of both states. The widows of Wilson and Fraser both sought workmen's compensation survivor's benefits in Maryland. Sears did not contest jurisdiction. After finding that the deaths arose out of and in the course of employment, the Maryland Workmen's Compensation Commission, in each case, made an award in excess of $27,000. Wilson's widow, as administratrix of his estate, then commenced this action for wrongful death.

The defendant contends and the plaintiff denies that a claim for Wilson's death would have been cognizable under the Virginia workmen's compensation laws; that in such cases Virginia law bars a wrongful death claim against a fellow servant who caused the death; and that Maryland would apply the Virginia law so as to bar this wrongful death claim.

## I.

Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny make it clear that in a case founded upon diversity of citizenship this court must apply the law that would be applied by the highest court in Maryland. This law is settled. The Maryland Wrongful Death Statute, Annotated Code of Maryland, Art. 67, § 2 (1970), provides that whenever a wrongful death has occurred outside of Maryland:

the courts of this State shall apply the law of such other state, . . . to the facts of the particular case, as though such foreign law were the law of this State, provided, however, that the rules of pleading and procedure effective in the courts of this State in which the action is pending govern and be so applied as to give effect to the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred.

Initially then, it is clear that this court must look to the laws of Virginia to determine whether the instant suit may be maintained.

Virginia, like Maryland, has a workmen's compensation law providing benefits for injuries to or death of employees. Under both workmen's compensation laws, the injuries or deaths must arise out of and in the course of covered employment. *See,* Annotated Code of Virginia, § 65.1–7 (1968); Annotated Code of Maryland, Art. 101, § 15 (1964). *See also,* Immer & Co. v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967); Coates v. J. M. Bucheimer Co., Inc., 242 Md. 198, 218 A.2d 191 (1966). In Maryland, neither the eligibility for nor the receipt of such benefits is a bar to suit against a fellow servant who was responsible for the injuries or death. Travelers Corp. v. Boyer, 301 F.Supp. 1396 (D.Md. 1969); Hutzell v. Boyer, 252 Md. 227, 249 A.2d 449 (1969). The rule in Virginia is otherwise. Section 65.1–40 of the Annotated Code of Virginia, 1968, provides that an employee, his personal representative, or dependents may not recover in tort from a fellow employee where the injuries sustained arose out of and in the course of the employment. Thus in Virginia, workmen's compensation benefits are the exclusive remedy where the injuries resulted from the actions of a fellow employee. *See,* Lucas v. Biller, 204 Va. 309, 130 S.E.2d 582 (1963); Ferrell v. Beddow, 203 Va. 472, 125 S.E.2d 196 (1962). See also, Beall v. Standard Elec. Co., 404 F.2d 881 (4th Cir. 1968); Doane v. E. I. Dupont de Nemours & Co., 209 F.2d 921 (4th Cir. 1954).

In Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946), the Supreme Court of Appeals of Virginia clearly set forth the rationale for the development of its workmen's compensation law and its attendant bar to suits between fellow servants. It is this bar that the defendant relies upon in claiming that the wrongful death action may not be maintained in Maryland. The plaintiff seeks

to avoid the bar by contending that the *lex loci delecti* does not extend to the workmen's compensation laws of a foreign jurisdiction. The plaintiff further argues that even if this bar does so extend, Maryland would reject it as being contrary to the State's public policy. This court is persuaded otherwise.

Home Indemnity Co. of New York v. Poladian, 270 F.2d 156 (4th Cir. 1959), involved a claim arising out of injuries to a District of Columbia employee who was injured while temporarily employed in Virginia. The contention there, as here, was that the laws of Virginia governed only the substantive aspects of the claim such as negligence and that the workmen's compensation laws of Virginia which would bar the claim were not part of the *lex loci delecti*. Chief Judge Soboleff termed such a contention "curiously restrictive" and observed "that nothing could be more directly related to substance than the question of liability." *See also*, Restatement (Second), Conflict of Laws, § 184 (1971).

The court has little doubt that there are no public policy or other considerations which would lead the Maryland Court of Appeals to a contrary conclusion. In Harford Mutual v. Bruchey, 248 Md. 669, 238 A.2d 115 (1968), that court held that the law of Virginia—the place of accident—which did not permit recovery for loss of consortium was controlling in an action brought in Maryland whose laws did permit such a recovery. Similarly, in White v. King, 244 Md. 348, 223 A.2d 763 (1966), the Court of Appeals of Maryland held that the Michigan guest statute defeated recovery by a Maryland passenger who brought an action in Maryland against a Maryland driver for injuries sustained in an accident in Michigan. In these holdings, Maryland has rejected the so-called "center of gravity", "grouping of contacts" and "most significant relationships" tests for the older and in the view of the Maryland Court of Appeals more sound *lex loci delecti* rule.

Nonetheless plaintiff cites Hutzell v. Boyer, 252 Md. 227, 249 A.2d 449 (1969), as authority for her contention that the public policy of Maryland would be contravened by applying the bar of Virginia workmen's compensation law. In that case, both Boyer and Hutzell were Maryland residents employed in Virginia by a Virginia employer. The employer furnished transportation from their home in Maryland to the Virginia job site by providing a truck driven by Hutzell. While they were returning from work, the truck was involved in an accident in Maryland and Boyer was injured. Boyer was not entitled to workmen's compensation benefits in Maryland but he was entitled to such benefits in Virginia. However, he declined to make a claim for them and instead, filed a common law tort action against Hutzell in Maryland. The Court of Appeals of Maryland held that the Virginia workmen's compensation law which barred common law actions against a fellow servant would not prohibit the bringing of such an action in Maryland where the accident happened in Maryland, whose law permitted such suits. This court reads Hutzell v. Boyer as holding only that where the accident occurred in Maryland a claim for injuries sustained could not be defeated by the fact that the injured workman was covered by the workmen's compensation law of another state which would have barred that claim had it been brought in the other state. To this court, the public policy of Maryland, manifest in its statutes, is that where a wrongful death occurs in another state "the courts of this State shall apply the law of such other state . . . as though such foreign law were the law of this State." Annotated Code of Maryland, Art. 67, § 2. If the Maryland Legislature had wanted it otherwise, it would have been easy to say so. *See*, Restatement (Second), Conflict of Laws, § 183 (1971).

II.

■  At the outset it is clear that it is eligibility for benefits under the workmen's compensation laws of Virginia, not whether a claim for benefits was actual-

ly made or received, which determines whether a bar to a common law action exists. Home Indemnity v. Poladian, 270 F.2d 156 (4th Cir. 1959); McCann v. Newport News Shipbuilding and Dry Dock Co., 177 F.Supp. 909 (E.D.Va. 1959). Thus, it becomes necessary to determine whether Wilson's widow would have been eligible for benefits under Virginia's workmen's compensation law because of the death of her husband and, if so, whether Wilson and Fraser were fellow servants at the time of the accident. The answer to these questions lies in a determination by this court of what the highest court of Virginia would say was a proper application of Virginia laws by the Virginia Industrial Commission on a claim which, in fact, was not presented to it. At best, the process can hardly be said to lend itself to the highest degree of exactitude.

The workmen's compensation laws of Maryland specifically exempt from coverage the nonresident employees of a nonresident employer when such employees are temporarily or intermittently within the State of Maryland incident to their employment provided certain other statutory conditions are also present. Annotated Code of Maryland, Art. 101, § 21(c)(5). This court has been unable to find any comparable statutory or case law exception for the Virginia workmen's compensation law at the times pertinent to this case. McCann v. Newport News Shipbuilding and Dry Dock Co., 177 F.Supp. 909 (E.D. Va.1959), however, offers some support for the proposition that Virginia will extend its workmen's compensation coverage to employees temporarily within the state in the course of their employment. In that case, Judge Hoffman stated:

> While the precise question has apparently never been decided in Virginia, as the compensation statutes make no reference to the status of non-residents working in Virginia at the time of the accident, it is believed that Virginia intended to grant such remedies to, and impose such restrictions and limitations upon, such nonresidents to the same extent as though they were residents and employed by a Virginia employer. *Id.* at 913.

Additional support for this argument is found in Larson's treatise on workmen's compensation laws wherein it is said:

> The view, that whatever other arrangements it may make about applicability, each state should unreservedly take responsibility for injuries within its borders rests not on any survival of delictual conflicts rules but on simple statutory construction, on the unavoidable interest of the state in an injury that may affect its own citizens more than those of any other state and on the desirability of providing a backstop liability to which claimant can turn whenever he finds himself on the wrong side of all other extra territoriality rules.

3 Larson's Workmen's Compensation Law, § 87.25 (1971). Indeed, this court believes that such an application would be in keeping with the remedial nature of workmen's compensation laws and the general liberality which attends their construction. *See, e. g.,* Dixon v. Norfolk Shipbuilding and Drydock Corp., 182 Va. 185, 28 S.E.2d 617 (1944). *See also,* Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 28 S.E.2d 725 (1944).

The liberality of construction is clearly reflected in the Virginia cases adopting and applying the "actual risk test" in determining whether the injuries to the workmen are compensable. For example, in Honaker and Feeney v. Hartley, 140 Va. 1, 124 S.E. 220 (1924), the court observed that the employment relationship "caused the employee to be at the place he was at the time of the accident and thus exposed him . . . to the hazard or risk of the happening of the accident, . . . the circumstance that the accident and injury occurred outside of regular working hours [being] wholly immaterial." *See also,* Lucas v. Lucas, 212 Va. 561, 186 S.E.2d 63 (1972); Immer v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967); Ferrell v. Beddow, 203 Va. 472, 125 S.E.2d 196 (1962).

It is against this backdrop that the court must now answer the questions of whether Virginia would have taken cognizance under its workmen's compensation laws of a claim for the death of Wilson and, if so, whether Wilson and Fraser were fellow servants at the time of the accident. In addition to Maryland and Virginia, Sears does business in all other states. Pontlitz deposition at 15. Wilson and Fraser were management employees of Sears who had been trained in and served at Sears' stores in other states and could reasonably have been expected to be transferred at a later date to Sears' stores in other states. *Id.* at 14–17. The Sears store in Bethesda to which they were assigned at the time of their deaths has a trading area in the metropolitan area of the District of Columbia with customers from the District of Columbia, Maryland and Northern Virginia. *Id.* at 23. At the time of their deaths, they were returning to the Sears store to which they were assigned from a dinner sponsored by Sears which had a direct relationship to their employment. The route that they were taking would be neither unusual nor unnatural in order to travel from the place of dinner in the District of Columbia to the Sears store in Bethesda. The purpose of the trip was for one employee to be transported by another employee back to the place of employment so that the passenger could obtain his car which was parked at the Sears store in Bethesda where he was employed. Under these circumstances and bearing in mind the actual risk test which Virginia has adopted, the court concludes that the accident arose out of and in the course of employment. *Cf.* Kent v. Virginia-Carolina Chemical Co., 143 Va. 62, 129 S.E. 330 (1925); Ferrell v. Beddow, 203 Va. 472, 125 S.E.2d 196 (1962). Furthermore, the plaintiff has embraced such a theory by claiming and receiving benefits under the Maryland workmen's compensation law which necessitated a determination under Maryland law, which is substantially the same as that of Virginia, that Wilson's death arose out of and in the course of his employment. Finally, it is important to note that Sears, at the time of the accident, had filed with the Virginia Industrial Commission as a self employer, thereby providing coverage for its injured employees.

It is arguable that the case of Solomon v. Call, 159 Va. 625, 166 S.E. 467 (1932), might be read as auguring for a different conclusion. The court rejects such a reading, however, for several reasons notably among which are that the case was decided in 1932, the employer appears only to have been located in Pennsylvania and no qualification with the Virginia Industrial Commission appears to have been made by the employer.

For the foregoing reasons, the court concludes that under the law of Virginia the death of Wilson arose out of and in the course of his employment with Sears and that a claim for workmen's compensation benefits would have been allowed under the Virginia law as a consequence of his death in Virginia. The facts relied upon in reaching this conclusion show as well that Fraser had at the time of his death the same status as Wilson. The wrongful death action has been brought against the executrix of Fraser's estate for the alleged negligence of Fraser. No other person or cause has been alleged or shown as responsible for Wilson's death. *A priori*, then Wilson and Fraser were fellow servants at the time of the accident and under Virginia law the wrongful death claim is barred. Accordingly, the defendant is entitled to judgment as a matter of law. Counsel shall submit a form of judgment consistent with this opinion.