# Staunton

MARGARET SUE PHILLIPS, ADMINISTRATRIX OF THE ESTATE OF
LONNIE HARRY WILLIAM PHILLIPS, DECEASED v. WILLIAM
MERRITT BRINKLEY AND WILLIAM HERNDON BRINKLEY.

September 10, 1952.

Record No. 3947.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Duncan M. Byrd, Francis C. Lee, E. A. Gentry, J. Lindsay Almond, Jr., Attorney General* and *C. Champion Bowles, Assistant Attorney General,* for the plaintiff in error.

*Wayt B. Timberlake, Jr.,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

Margaret Sue Phillips, administratrix of the estate of her husband, Lonnie Harry William Phillips, sued William Merritt Brinkley and William Herndon Brinkley, charging them with negligence in the death of her husband, who, at the time, was riding in a truck operated by William Merritt Brinkley. Phillips was employed by the Virginia Department of Highways and his dependents have been granted an award under the Workmen's Compensation Act.

The contention of the plaintiff was that this award was not exclusive of her right to sue the Brinkleys. She contended that the truck was owned by William Herndon Brinkley, the father of William Merritt Brinkley, and that the father and son were independent contractors working for the highway department.

The suit was tried on the plaintiff's notice of motion for judgment and on the pleas thereto filed by the Brinkleys. The plaintiff demurred and filed replications to the pleas.

The pleas alleged that the defendant, William Merritt Brinkley, and Phillips, were fellow servants of the highway de-

partment, working in the course of their employment at the time of the accident, and that the exclusive remedy for Phillips' death was the award against his employer under the Compensation Act, and that William Herndon Brinkley had no legal connection with the transaction. It was admitted that Phillips was an employee of the highway department.

The demurrer filed by the plaintiff to the defendants' pleas was overruled and a jury was empaneled to hear the evidence on the issues raised. The defendants introduced evidence tending to prove that William Merritt Brinkley was a fellow servant and not an independent contractor. Evidence was also introduced to show that William Herndon Brinkley had no legal responsibility in the matter.

When the defendants completed their evidence the plaintiff declined to offer any testimony. At this point Mr. Gentry, of counsel for plaintiff, remarked: "* * * Well, it seems to be the consensus of opinion of my colleagues that the evidence that has been introduced does present a question of law, that our evidence would only go to corroborate what has been testified to and wind up a question of law, and it would seem, maybe, that it's just belaboring the issue."

Whereupon the court ruled that as the evidence was not in conflict the issue to be determined was a question of law, and accordingly the jury was discharged.

After hearing argument on the question the court decided that the evidence showed William Merritt Brinkley was an employee of the highway department rather than an independent contractor and therefore sustained his plea. Summary judgment under Rule 3:20 of the Rules of Court was also entered at this time in favor of William Herndon Brinkley as the evidence showed that he was not connected with the employment of his son.

An order was entered February 27, 1951, carrying into effect the rulings of the court, to which exceptions were taken by the plaintiff, and we granted her a writ of error.

It is not necessary for us to pass upon the correctness of the court's action in discharging the jury in this instance, for, as we view the evidence, only one result could properly be reached under the issue presented.

As disclosed by the record, the briefs filed, and admis-

sions in oral argument before us, the sole question for decision is whether William Merritt Brinkley was an employee of the highway department at the time of the fatal accident or whether he was an independent contractor. If he was an employee the judgment of the trial court should be affirmed as it is conceded that an award under the Virginia Workmen's Compensation Act is the exclusive remedy where an employee subject to the Act is injured by a fellow employee. *Feitig* v. *Chalkley,* 185 Va. 96, 38 S. E. (2d) 73; *Coker* v. *Gunter,* 191 Va. 747, 63 S. E. (2d) 15.

Only if the evidence before us shows Brinkley to have been an independent contractor rather than an employee of the highway department can this action be maintained.

The evidence shows that young Brinkley was twenty years of age when this accident occurred. After he finished high school in June, 1950, he decided to buy a truck for the purpose of doing general hauling. To make the purchase he borrowed $1,000 from his father to be used as the down payment. He purchased the truck, and because he was not of age, had the title put in his father's name. For the same reason the father signed the contract to finance it. After the purchase of the truck young Brinkley exercised exclusive control over it and received all compensation from its use. He hauled generally for people in the community until he was approached by Porter McCray, a foreman of the State Highway Department. McCray offered to hire him and his truck for the highway department at the rate of $2 per hour. Young Brinkley accepted the employment and worked from June 28 through August 21, the day of the accident.

The work day began at 7:00 a.m. and continued until 5:30 p.m. He was required to report on time at the State shed in the morning and there he was told what to do and where to go. His principal work was hauling posts, but at times he hauled other things, and frequently was sent out to pick up the workmen in the afternoon.

Other employees of the department accompanied him at his work and they, including Brinkley, loaded and unloaded the truck. When McCray was not present Charlie Losh, the timekeeper, was in charge of Brinkley and the other man. On the day of the accident Brinkley, and Phillips and Neff were not engaged in hauling posts but were hauling other things for the State.

Brinkley's employment was indefinite. He was not employed for a particular length of time. His truck was stored at night at his expense and he furnished the gas and oil for its operation. He was paid every two weeks by check from the highway department based upon the number of hours he worked. On several occasions he asked McCray for a day off and when this was granted he engaged in other pursuits. The above fairly discloses the basis of employment as shown by the record.

Under the facts before us young Brinkley was clearly an employee of the highway department. The department controlled the work to be performed by him and there is a complete lack of any contract for the doing of certain specified work at a fixed price.

"The relation of principal and independent contractor is created when a person employs another to obtain specific results, but has no control or right of control over the details of his movements, or the time or manner of performing the work. The two criteria most relied upon in determining whether one is an independent contractor or a servant are: first, in which party lies the control over the work; second, is there present in the particular case the existence of a contract for the doing of certain work at a fixed price." 9 M. J., Independent Contractors, § 3, page 627, citing *Knight* v. *Peoples Nat. Bank*, 182 Va. 380, 29 S. E. (2d) 364; *Ross* v. *Schneider*, 181 Va. 931, 27 S. E. (2d) 154.

"In determining whether a relationship is that of employer and independent contractor or master and servant, the final test is the right of control." 9 M.J., Independent Contractors, § 5, page 627, citing *Griffith* v. *Electrolux Corp.*, 176 Va. 378, 11 S. E. (2d) 644; *Ross* v. *Schneider*, *supra*.

"An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result.

"If, under the contract, the party for whom the work is being done may prescribe not only what the result may be but may also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control

the work. And it is this right which properly differentiates service from independent employment." 9 M.J., Independent Contractors, § 5, page 628, citing *Craig* v. *Doyle,* 179 Va. 526, 19 S. E. (2d) 675.

"One of the tests in determining whether the relationship created is that of master and servant or independent contractor is whether either of the parties possesses the right to terminate the service at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work. An affirmative answer establishes the status of master and servant." 9 M.J., Independent Contractors, § 7, page 629, citing *Texas Co.* v. *Zeigler,* 177 Va. 557, 14 S. E. (2d) 704.

We held in the case of *Hann* v. *Times-Dispatch Pub. Co.,* 166 Va. 102, 106, 184 S. E. 183, that a newsboy who was required to report each morning at a definite time, after which he delivered newspapers throughout a certain route or territory on his bicycle, and who was paid a commission based upon the number of papers sold, was an employee of the newspaper whose rights were governed by the Workmen's Compensation Act. There, Mr. Justice Eggleston, speaking for the court, said:

"In the instant case the requisite 'power of control' was unquestionably in the newspaper company. Both the route and the list of customers were its property. Hann could not deviate therefrom. He had to report at a certain time and complete his route by a certain hour. There is no suggestion that he had the right to sublet his work. The services were of a personal nature, and, if unsatisfactory, Hann was subject to discharge at the will of the supervisor. This was true of the forty-six other carriers who were employed on the same basis."

In the case of *Brown* v. *Fox,* 189 Va. 509, 54 S. E. (2d) 109, where a boy agreed to buy a truck from Fox Brothers and to haul lumber at $5 per thousand feet, as well as to haul other materials at prices to be agreed upon, and under the contract of employment he was told where to go and what to haul, we held him to be a servant of Fox Brothers rather than an independent contractor. There, Mr. Justice Staples, speaking for the court, said:

"There was no clear and specific contract to haul any particular quantity of lumber to any particular places, and Fox's

testimony shows that he could terminate any hauling of lumber at his pleasure * * *.

\* \* \* \* \* \*

"But even if appellant had been the legal owner of the truck, and even if he had agreed that his compensation for hauling lumber would be $5.00 per thousand feet, these facts would not have justified the finding that he was an independent contractor, if Fox had authority to control and direct his actions, as he actually did * * *.

\* \* \* \* \* \*

"Upon consideration of the testimony as a whole, we conclude that there is no evidence which would justify an inference that the appellant was not subject to the control of Fox Brothers. It is clear that he was told when to haul lumber, where to haul it, and the route over which he should travel, and the fact that the mill crew assisted in the loading of the lumber indicates that this crew selected the lumber which was to be hauled. He was also directed when and where to do other hauling. For these and other reasons heretofore stated, it is our opinion that the relationship of master and servant existed between Fox Brothers and the appellant."

In the instant case young Brinkley was employed by McCray to work for the highway department at $2 per hour "for me and the truck". He was paid every two weeks by check, as were the other employees. He was ordered to be at the State shed at seven o'clock in the morning where Mr. McCray "would tell us what to do and where to go".

Under these circumstances clearly young Brinkley had a right to quit his job when he chose, and McCray, as foreman, having control over him, could have discharged him for not obeying his orders and instructions.

The right to discharge emanates from the right of control and we hold the right of control to be the main test by which the relation of master and servant is determined.

As heretofore indicated, under the evidence in this case young Brinkley was a fellow servant, and for the reasons stated this suit against him cannot be maintained.

The judgment of the trial court is therefore

*Affirmed.*