Frank WESTERN, Jr., and Johnie T. Sinnett, in behalf of themselves Individually and all others similarly situated, Plaintiffs,

v.

James D. HODGSON, Secretary, Department of Labor, et al., Defendants.

Civ. A. No. 2917.

United States District Court,
S. D. West Virginia,
Huntington Division.

May 14, 1973.

John Troelstrup, Weaver & Troelstrup, Daniel F. Hedges, Charleston, W. Va., for plaintiffs.

John A. Field, III, U. S. Atty., Charleston, W. Va., for defendant James D. Hodgson.

Charles F. Bagley and Robert K. Emerson, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., Valentine & Partain, Logan, W. Va., for defendants Buffalo Mining Co. and Lorado Super Market, Inc.

CHRISTIE, District Judge:

Plaintiffs, employees of Buffalo Mining Company (Buffalo), on behalf of themselves and others similarly situated, instituted this class action against the Secretary of the Department of Labor, Buffalo, and Lorado Super Market, Inc. (Lorado), complaining that the deduction from their wages by Buffalo of amounts owed by plaintiffs to Lorado violates the provisions of § 1 of the Civil Rights Act of 1871 (now 42 U.S.C. § 1983), as well as the provisions of Title III of the Consumer Credit Protection Act, 15 U.S.C. § 1671 et seq. Additionally, plaintiffs complain that although they have sought relief from the Secretary of the Department of Labor, the Secretary has thus far failed and refused to enforce the provisions of the anti-garnishment subchapter of the Consumer Credit Protection Act so as to protect plaintiffs from what they contend are illegal deductions from their wages. Plaintiffs also attack the constitutionality of a West Virginia statutory provision regulating assignment of wages, West Virginia Code Chapter 21, Article 5, Section 3, alleging that the statute is a violation of the Due Process Clause of the Fourteenth Amendment to the Constitution. In the alternative, plaintiffs allege that Buffalo and Lorado have violated this same statutory provision with regard to the deductions which Buffalo has taken from the wages of the plaintiffs and paid to Lorado. This latter claim clearly involves a purely state cause of action and is asserted under the pendent jurisdiction of the court.

Plaintiffs seek injunctive and declaratory relief and monetary damages, asking the court to declare: (1) that the term "garnishment," as defined in Title III of the Consumer Credit Protection Act, 15 U.S.C. § 1672(c), covers wage assignments and that such wage assignments, therefore, are subject to the regulations imposed by Title III of the Act, (2) that the actions of Lorado and Buffalo with respect to deductions from the payment of plaintiffs' wages are in violation of the anti-garnishment provisions of the Consumer Credit Protection Act, and (3) that the West Virginia statutory provision governing the assignment of wages, West Virginia Code 21–5–3, violates the Due Process Clause of the Fourteenth Amendment. Plaintiffs further seek injunctive relief requesting the court to order the Secretary of the Department of Labor to enforce the provisions of the Consumer Credit Protection Act with respect to the deduction of the wages of plaintiffs and others similarly situated, by Buffalo, and payment of such deductions to Lorado. With respect to relief against Buffalo and Lorado, plaintiffs request that in addition to monetary damages, this court permanently enjoin and restrain Buffalo from further depriving plaintiffs and the class they represent of earned wages except as permitted by law and that the court further enjoin and re-

strain Lorado from taking and collecting wage assignments from plaintiffs and the class they represent, until such time as such assignments are in compliance with the provisions of the laws of the State of West Virginia. Plaintiffs do not state the amount of compensatory damages sought by them, praying only that, with respect to Buffalo, they be awarded an amount equal to the amount wrongfully withheld from their wages, plus interest, and, with respect to Lorado, that they be .awarded an amount equal to that paid Lorado ˙pursuant to the wage assignments. Additionally, plaintiffs pray for an award of $20,000.-00 in punitive damages against both Buffalo and Lorado.

By their joint answer, defendants Buffalo and Lorado raise the issues of lack of jurisdiction and failure to state a claim upon which relief may be granted. The defendant Secretary of the Department of Labor, by motion, has moved the court to dismiss the action insofar as it pertains to the Secretary, asserting that the complaint fails to state a claim upon which relief can be granted since it fails to establish that a case or controversy exists between plaintiffs and the Secretary of the Department of Labor and for the further reason that the controversy between the Secretary and the plaintiffs is not "ripe" for judicial action.

## STATEMENT OF FACTS

The underlying transactions upon which plaintiffs base their various claims and causes of action, as developed in the pleadings and in argument before the court, may be summarized as follows: Plaintiffs, employees of Buffalo, purchased merchandise from Lorado on credit and, at the same time, executed agreements characterized by the plaintiffs as "purported wage assignments" and by the defendants as "voluntary revocable agreements" authorizing plaintiffs' employer to deduct amounts owed by plaintiffs to Lorado from their pay-checks and pay such amounts directly to

Lorado. The executed agreements were then presented by Lorado to Buffalo and, pursuant to the terms of such instruments and the amounts which Lorado informed it were owing by the various plaintiffs, Buffalo deducted the amounts owed from plaintiffs' wages and paid these amounts directly to Lorado. As a consequence of such deductions, plaintiffs received no "take home" wages for some pay periods and less than seventy-five percent of their wages for other pay periods. In their complaint, plaintiffs allege that Lorado, in taking such purported wage assignments, and Buffalo, in honoring them, were acting pursuant to and under the provisions of, West Virginia Code 21–5–3. That code section, insofar as it is relevant to this action, provides as follows:

"Nothing herein contained shall affect the right· of an employee to assign part of his claim against his employer except as hereafter provided.

"No assignment of or order for future wages shall be valid for a period exceeding one year from the date of such assignment or order. Such assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and such order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided, further, that no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon: Provided further, that nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees; . . .."

Contending that the deductions from their wages by Buffalo of money owed to Lorado was in violation of the anti-garnishment provisions of the Consumer Credit Protection Act, plaintiffs complained to representatives of the Wage and Hour Division of the Department of Labor. The response to this complaint from an area director of the Wage and Hour Division indicated that the Department of Labor took the position that voluntary wage assignments, such as those made by plaintiffs to Lorado, were not covered by the Act and, consequently, the Department of Labor had no jurisdiction to intervene. The area director's response and his reasons for refusing to apply the anti-garnishment provisions of the Act were given in his letter as follows:

"The term 'garnishment' is defined in Section 302(c) of the Act, to mean 'any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt'. It is our opinion 'garnishment' refers to a court proceeding through which a creditor seeks to reach an individual's earnings before they are paid to him, so that they may be applied to the satisfaction of a claim against the individual. On the other hand, an assignment of wages is a transfer of the right to receive wages ordinarily effected by means of contract. An assignment of wages which is generally a private transaction made voluntarily and without any compulsion by court, is not considered a 'garnishment' within the meaning of Title III."

Subsequent to the time that representatives of the Department of Labor informed plaintiffs of the Department's position with respect to the meaning of the term "garnishment," and as a consequence of various factors including the experience of the Department in enforcing the Act, opinions on questions subsequently presented, recent court decisions and oversight hearings held before the Subcommittee of the House of Representatives on Consumer Affairs, the Department decided to review its position with regard to the definition of garnishment. At present, the Department is studying the extent to which certain non-court procedures under particular state statutes could come within the meaning of the term "garnishment," as that term is defined in the Act, consequently, the Department's present position that garnishment contemplates a court proceeding may be subject to future modification, qualification, or refinement.

## FEDERAL CLAIMS ASSERTED AGAINST BUFFALO AND LORADO

*Violation of Section 1 of the Civil Rights Act of 1871*

With reference to plaintiffs' contention that the deductions from their wages of amounts owing to Lorado constitute a violation of Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983,[1] in that it is allegedly a taking of property without due process of law, it first should be noted that to constitute a violation of § 1983, not only must plaintiffs have been denied a right, privilege or immunity without due process of law (i. e., without notice and an opportunity for a hearing, Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)), but such deprivation must have been "under color of" a state statute, ordinance, regulation, custom or usage. Adickes v. S. H. Kress & Company, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Thus, under the facts of the present case, even if we assume that

---

1. 42 U.S.C. § 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

plaintiffs have been deprived of a constitutional right, i. e., the right not to be deprived of the receipt and possession of their wages without notice and a hearing,[2] for the violation to be actionable we must further find that such deprivation was the consequence of, or was occasioned by one acting under color of state or local law. The requirement of action or conduct under color of state law limits the scope of the cause of action under Section 1983 to situations "where the things done have at least some attribute of state authorization for having been engaged in," and this requirement of state involvement rarely can be satisfied in the absence of the involvement of state officials. Motley v. Virginia Hardware and Manufacturing Co., Inc., 287 F.Supp. 790, 793 (W.D. Va.1968). Although the "color of law" or "state action" requirement is not easily defined, and only by "sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance," Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S. Ct. 856, 860, 6 L.Ed.2d 45 (1961), nevertheless, principles enunciated by the courts in other cases involving § 1983 claims provide useful insights for analyzing those terms and defining and limiting the scope to be given them. In Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), the Court, quoting from United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), defined "under color of state law," as used in § 1983, as a " '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . .' " In Lucas v. Wisconsin Elec-

tric Power Company, 466 F.2d 638, 654–656 (7th Cir. 1972), cert. den. 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696, the Court described "state involvement," as contemplated by § 1983, in the following manner:

"The 'under color of' provision encompasses only such private conduct as is supported by state action. That support may take various forms, but it is quite clear that a private person does not act under color of state law unless he derives some 'aid, comfort, or incentive,' either real or apparent, from the state. Absent such affirmative support, the statute is inapplicable to private conduct.

"We believe that affirmative support must be significant, measured either by its contribution to the effectiveness of defendant's conduct, or perhaps by its defiance of conflicting national policy, to bring the statute into play."

On the basis of the principles set forth in these and other cases construing § 1983, it is clear that the action of Lorado and Buffalo cannot be characterized as "under color of" state law. Both of these defendants are private corporations and neither functions as an official arm of the State of West Virginia. There is no allegation in the complaint that the defendants acted in conjunction with state officials or conspired with such officials in accomplishing the results of which plaintiffs complain. Thus, this case presents a situation in which only private parties are involved and in which a purely private transaction occurred between the parties. The only "state involvement" claimed by plaintiffs arises from their allegations that the deductions from their wages were

---

2. In view of the fact that plaintiffs executed the agreements authorizing the deduction of money from their wages, and in the absence of any assertion that this agreement was anything other than a voluntary act, it might be argued that any due process right which plaintiffs had was waived by them upon execution of the agreements. See D. H. Overmyer Co., Inc. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). However, under our disposition of this case, the question of whether or not there was a waiver of a right to a hearing and notice is not reached and we, accordingly, intimate no view with regard to that question.

sanctioned by a West Virginia statute concerning wage assignments.[3] State involvement of this character, however, is not the type contemplated by § 1983. Although it is clear that the state statute in question *permits* assignments of wages if certain conditions are complied with, the inference that in so doing it enforces or requires adherence to an otherwise unconstitutional private act is unwarranted. Warren v. Cummings, 303 F.Supp. 803, 805–806 (D.C.Colorado, 1969). The action of the defendants Lorado and Buffalo, with regard to the deductions from plaintiffs' wages, simply involved the exercise of power possessed by virtue of their private citizenship. In accepting such orders or wage assignments and deducting money from plaintiffs' wages, they were not exercising a power commonly attached to the state or ordinarily performed by state officials. McMeans v. Schwartz, 330 F. Supp. 1397 (S.D.Ala.1971). As stated by the Court in Elders v. Consolidated Freightways Corporation of Delaware, 289 F.Supp. 630, 634 (S.D.Minn.1968),

> ". . . [A]ll laws defined and control relationships. The common law of assault prescribes the situations in which an attack is or is not legally justifiable. Surely when Tom assaults his neighbor Dick, though not his neighbor Harry, Dick has not been deprived of equal protection of law. See e. g. Mr. Justice Jackson's comments in Collins v. Hardyman, supra [341 U.S. 651], 71 S.Ct. [937], at 942 [95 L.Ed. 1253]. An application of plaintiff's theory would render the concept of state action a hollow and superfluous element as any civil action which had some precedent in the law of the state could be described as done under color of law. This is not what the term means. And even though a

state has seen fit to define the rights and duties governing a given relationship between private citizens, action taken pursuant to such statutes is not, in the sense of §§ 1983 and 1985, state action."

It cannot be said that the wage assignments involved in this case were possible only by virtue of the state statutes since, in purpose and effect, the statute in question is a limitation on the right of creditors to take wage assignments from employees. Assignments, including assignments of the right to future earnings, were valid and enforceable in courts of equity, if not courts of law, prior to the enactment of 21–5–3. See Garland v. Richeson, 25 Va. (4 Rand.) 266 (1826); Stebbins & Lawson v. Bruce, 80 Va. 389, 399, 400 (1885). See also 5 A & E Am.Cas. 64. In the absence of the statute which is alleged by plaintiffs to constitute state involvement in this case, creditors could undoubtedly obtain and enforce wage assignments under conditions much less favorable to employees than now permissible. Clearly, under such circumstances, we would be unwarranted in finding that Lorado and Buffalo took and accepted the wage assignments only "by virtue" of this particular statute.

In view of the fact that wage assignments were judicially approved prior to and independent of the statute in question, see Oller v. Bank of America, 342 F.Supp. 21, 23 (N.D.Cal.1972), and of the complete absence of state involvement either by state officials or by state support, we are compelled to hold that no action has been taken "under color of" state law and, consequently, that plaintiffs' complaint, insofar as it is based upon a claimed violation of rights under § 1983, must be dismissed for

---

3. Lorado and Buffalo deny the allegation that the deductions were made in accordance with, or under the authority of, the provisions of West Virginia Code Chapter 21, Article 5, Section 3, and allege in their joint answer that the deductions were pursuant to a "voluntary revocable agreement." For the purpose of the defendant's motion to dismiss, however, we will assume that the deductions were made pursuant to wage assignments which had been made in accordance with the provisions of 21–5–3.

failure to state a claim upon which relief can be granted.

*Private Cause of Action Under Anti-garnishment Title of the Consumer Credit Protection Act*

Plaintiffs next assert that the deductions from their wages by Buffalo and the payments to Lorado of the amounts so deducted violate the anti-garnishment provisions of the Consumer Credit Protection Act, and they seek injunctive relief from such alleged violations, together with monetary damages. By their answer, defendants move the court to dismiss the claim asserting that Subchapter II of the Act (the anti-garnishment subchapter) does not provide a private remedy to individuals allegedly injured by violations of that subchapter.

The Consumer Credit Protection Act (Act) 15 U.S.C. § 1601 et seq., passed by Congress in 1968, is divided into three subchapters, each one pertaining to a particular aspect of the regulations of consumer credit: Subchapter I—Consumer Credit Cost Disclosure, Subchapter II—Restrictions on Garnishment, and Subchapter III—Credit Reporting Agencies. The provisions of Subchapter II and its restrictions on garnishment concern us in this litigation.

With respect to garnishment of wages, that subchapter provides certain limitations on the maximum amounts which can be garnished from the wages of any individual, generally limiting the amount which can be garnished to 25%. 15 U.S.C. § 1673. Additionally, the subchapter prohibits employers from discharging employees because their earnings have been subjected to garnishment for any one . indebtedness and provides a maximum $1,000 fine and one year imprisonment for violation. 42 U.S.C. § 1674. Section 1672 of Subchapter II, 15 U.S.C. § 1672, defines the term "garnishment" as used in that subchapter as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

■ Plaintiffs contend, first, that they have a private right of action for violations of Subchapter II, and second, that the action of Buffalo and Lorado with regard to the deductions from their wages constitutes garnishment as that term is defined in Subchapter II of the Act, and, therefore, is in violation of § 1673, inasmuch as amounts in excess of 25% have been deducted from their wages. However, this Court finds that a private right of action for violation of the anti-garnishment provisions of Subchapter II of the Act was neither provided for nor contemplated by Congress in enacting this legislation. In reaching this decision, the Court is not unmindful of the well-established rule of statutory construction that "a federal statute passed to protect a class of citizens, although not specifically authorizing members of the protected class to institute suit," nevertheless, implies a private right of action. Allen v. State Board of Elections, 393 U.S. 544, 557, 89 S.Ct. 817, 827, 22 L.Ed.2d 1 (1969); Wyandotte Transportation Company v. United States, 389 U.S. 191, 202–204, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). In the context of the anti-garnishment provisions of Subchapter II, however, we find this rule of construction inapplicable.

■ As pointed out by the Court in Breitwieser v. KMS Industries, Inc., 467 F.2d 1391 (5th Cir. 1972), federal courts have permitted litigants to enforce the provisions of federal statutes by way of private damage suits where, though a federal right clearly is involved, no federal remedy is available, or where, though a remedy is provided, the remedy is considered grossly inadequate. The anti-garnishment provisions of Subchapter II do provide adequate remedies for violation of that subchapter, i. e., (a) criminal penalties for violations of certain provisions, and (b) provisions for enforcement by the Secretary of Labor.

In addition to the criminal penalties and mandatory enforcement provisions found in Subchapter II of the Act, the fact that Subchapter I and Subchapter III of the Act, relating to credit cost disclosures and credit reporting agencies, specifically provide for jurisdiction

in the district courts of private rights of action lends support to the argument that Congress did not intend to create a private right of action for violation of the provisions of Subchapter II. The absence of such a provision in a legislative act in which other sections provide for private enforcement of the federal rights involved, however, has not always deterred the courts from implying a private right of action, see J. I. Case Company v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). But when this circumstance is considered together with the fact that other effective remedies, in fact, are provided under Subchapter II for enforcement of the federal rights set forth therein, we are persuaded that a private right of action should not be implied. To imply a private remedy under such circumstances, it appears, would amount to judicial legislation rather than judicial construction. This conclusion is given support by the decisions of other courts which have considered the question. In the only other cases brought to the attention of the Court in which the question has been raised as to whether a private right of action is sustainable, the courts have concluded that no private right of action for enforcing the provisions of Subchapter II can be implied. See Oldham v. Oldham, 337 F.Supp. 1039 (N.D. Iowa, 1972); Simpson v. Sperry Rand Corporation, 350 F.Supp. 1057 (W.D.La., 1972); Higgins v. Wilkerson, 63 Labor Cases, Paragraph 32,379, 65 Labor Cases, Paragraph 52,523 (D.C.Kan., 1970). Accordingly, insofar as it is based upon an alleged violation of the anti-garnishment provisions of the Consumer Credit Protection Act, plaintiffs' claim must be dismissed for failure to state a claim upon which relief can be granted.

## CONSTITUTIONALITY OF WEST VIRGINIA STATUTE REGULATING WAGE ASSIGNMENTS

Plaintiffs next ask this court to declare the unconstitutionality of West Virginia Code Chapter 21, Article 5, Section 3, a statute regulating wage assignments, as being violative of the Due Process Clause of the Fourteenth Amendment. Examination of previous court decisions concerning the constitutionality of similar statutes regulating wage assignments demonstrates the insubstantial and frivolous nature of this claim.

As previously noted, if this court were to strike down West Virginia Code 21-5-3, the result would be that creditors could take wage assignments from employees and then collect 100% of the employees' wages from the employer until satisfaction of the debt for which the assignment was given. Clearly this is not the result which the plaintiffs seek, however, since the statute in question does not create the right to assign wages but only regulates and restricts that right, to declare the statutory provision unconstitutional would have this undesirable consequence.

In Mutual Loan Company v. Martell, 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175 (1911), a creditor attacked the provisions of a Massachusetts statute regulating wage assignments. The statute, attacked as depriving the *creditor* of due process of law, provided that an assignment of wages to be earned in the future would be invalid against an employer unless the assignment was accepted in writing by the employer. The statute further required that the order and acceptance be filed and recorded with the clerk of the city or town in the place of residence or employment, and if the employee was married, the written consent of the wife was required to be attached to the assignment. The court, finding that the regulation was neither arbitrary nor unreasonable and that it was designed to accomplish a legitimate public purpose, held it to be clearly within the police power of the states. In numerous other cases in which the constitutionality of statutes regulating wage assignments has been an issue, the courts have similarly upheld their validity. See Beneficial Finance Co. v. Daloisio, 90 N.J.Super. 80, 216 A.2d 253 (1966), aff'd. 47 N.J. 263, 220 A.2d 195;

Sweat v. Commonwealth, 152 Va. 1041, 148 S.E. 774 (1929). See also 137 A.L.R. 738; Opinion of the Justices, 103 N.H. 381, 173 A.2d 578 (1961). It seems equally clear that the State of West Virginia has an interest in protecting both wage earners and employers. By enacting West Virginia Code Chapter 21, Article 5, Section 3, as we have seen, the state, in the exercise of its police power, was neither arbitrary nor unreasonable. Whether the claim of denial of due process be made by a creditor, an employer, or, as in this case, an employee, the statutory regulation of wage assignments cannot be interpreted, by any means, as depriving employees of their property without due process of law. See Knight v. People's Nat. Bank of Lynchburg, 182 Va. 380, 29 S.E.2d 364, 367 (1944), and cases cited therein.

Accordingly, we find the contention of plaintiffs with respect to the constitutionality of West Virginia Code 21–5–3, regulating the assignment of wages, to be without merit and dismiss that portion of plaintiffs' complaint.

## DECLARATORY AND INJUNCTIVE RELIEF AGAINST THE SECRETARY OF THE DEPARTMENT OF LABOR

■ Plaintiffs request this court to declare the term "garnishment," as defined in 15 U.S.C. § 1672(c), to include wage assignments such as those involved in the instant case and further ask the court to employ its injunctive power to require the defendant Secretary of Labor to enforce the provisions of the Consumer Credit Protection Act as so interpreted, thereby relieving plaintiffs of the burden of having greater amounts deducted from their wages than permitted by the provisions of Subchapter II of the Act.

As noted previously, the Secretary of Labor has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting, among other things, that the present controversy between plaintiffs and the Secretary of Labor is not "ripe" for judicial decision. In support of his motion, the Secretary has filed the affidavit of Richard Grunewald, Assistant Secretary for Employment Standards of the United States Department of Labor and the official charged by delegation from the Secretary of Labor with responsibility for the performance of the duties of the Secretary of Labor under Title III (Subchapter II) of the Act. The facts set forth in this affidavit, not disputed by plaintiffs, may be summarized as follows: Subsequent to July 1, 1970, the effective date of the anti-garnishment provisions of the Act, the Administrator of the Wage and Hour Division issued several letter opinions, currently published in the public domain in CCH Labor Law Reporter, paragraphs 30,641, 30,662, and 30,684, defining the term "garnishment" as referring only to those instances in which a court proceeding was involved and excluding private transactions, such as wage assignments, effectuated by purely private means. As a consequence of newly developed facts and circumstances, the Department of Labor is currently reviewing its position with regard to the definition to be applied to the term "garnishment." In particular, it is reviewing its position regarding the requirement of a court proceeding in order to constitute a garnishment within the meaning of the Act. The affidavit continues by stating that "since the interpretation as expressed in the above-cited opinion letters is undergoing study, it may be subject to modification, qualification, or refinement."

In determining whether plaintiffs are entitled to injunctive and declaratory relief with reference to the administrative rulings or determinations at issue in this litigation, it should be noted first that injunctive and declaratory relief in this context are clearly discretionary remedies. As stated by the Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967),

"The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been re-

luctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine, it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

Under the undisputed facts of the present case, particularly as set forth in the affidavit of the Assistant Secretary for Employment Standards, it appears that declaratory and injunctive relief would constitute, in fact, an interference with the administrative procedures utilized by the Department of Labor in formalizing its position with regard to the coverage of the anti-garnishment provisions of the Act. In view of the fact that the agency, at this point in time, has not reached a final decision with respect to the definition to be given the term "garnishment," action on the part of the court indeed would be premature and would be prior to that stage in the administrative process when the Secretary's decision has become "formalized." Plaintiffs complain that "any administrator whose rules are questioned in court could merely file an affidavit stating that he is reconsidering the regulations and the case would have to be dismissed." This argument, of course, fails to take account of the fact that the Administrator made representations under oath to this court to the effect that the Department, in fact, is reconsidering its position concerning the definition to be given to the term "garnishment." Plaintiffs have not introduced any evidence which would contradict the statements made in the affidavit, thus we must accept them as true. With respect to plaintiffs' assertion that any administrator could "merely file an affidavit," it would be contrary to this court's experience to find that officials in such positions of responsibility would "merely file" false affidavits subjecting themselves thereby to charges of perjury. Certainly there is no reason or circumstance to indicate that to be true in this case.

On the basis of the undisputed fact that the Department of Labor has not reached a final conclusion regarding its position on the coverage of the term "garnishment," as used in the Act, it is the opinion of the Court that the Secretary is entitled to dismissal of the complaint insofar as that complaint seeks declaratory and injunctive relief against the Secretary. The circumstances are such that there is not before the court an authoritative determination by the Department of Labor which is subject to judicial review. The affidavit of the Assistant Secretary for Employment Standards establishes the tentativeness of the Department's position. As stated by the Court in National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 443 F.2d 689, 703 (1971),

". . . [A]n affidavit by the agency head—not a mere argument by its court counsel—that a matter is still under meaningful refinement and development, will likely provide the element of tentativeness and reconsideration that should negative finality, or in any event ripeness."

The affidavit submitted in conjunction with the Secretary's motion for summary judgment establishes without dispute that the controversy between plaintiffs and the Secretary is not ripe for judicial determination. Accordingly, the Court grants the Secretary's motion for summary judgment.

PLAINTIFFS' CLAIM THAT ACTION OF DEFENDANTS BUFFALO AND LORADO VIOLATES PROVISIONS OF WEST VIRGINIA STATUTE REGULATING WAGE ASSIGNMENTS

Plaintiffs claim that the conduct of defendants Buffalo and Lorado vio-

lates the provisions of West Virginia Code Chapter 21, Article 5, Section 3, presents a claim arising under state law and over which this court has only pendent jurisdiction, inasmuch as there is no diversity of citizenship between the parties. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). In view of the fact that the federal claims involved in this controversy have been dismissed, it is clearly the duty of the court to refuse to exercise its power to litigate the state claim. As stated by the Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966),

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."